**In re Louis Theodore PAPPAS, Debtor.**

**STATE BANK OF PARSONS, Plaintiff,**

**v.**

**Louis T. PAPPAS, Defendant.**

**Bankruptcy No. 80–20470.**

**Adv. No. 80–0176.**

United States Bankruptcy Court,
D. Kansas.

Oct. 15, 1982.

Donald E. Bucher, of McDowell, Rice & Smith, Kansas City, Kan., for plaintiff.

George H. Barr, of Sheridan, Sanders & Simpson, Kansas City, Mo., and Robert H. Foerschler, of McAnany, Van Cleave & Phillips (Local Counsel), Kansas City, Kan., for defendant.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on October 26, 1981, upon a Complaint to Determine Dischargeability of Debt. Plaintiff, State Bank of Parsons (Bank) appeared by its attorney of record, Donald E. Bucher of McDowell, Rice & Smith, Chartered. Debtor-defendant, Louis T. Pappas (Pappas) appeared by his attorneys of record, George H. Barr of Sheridan, Sanders & Simpson; and local counsel, Robert H. Foerschler, of McAnany, Van Cleave & Phillips, P.A.

Bank contends that its claims for $47,-856.25 and $22,566.67 are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(2)(B). Specifically, Bank contends that Pappas obtained renewals of loans on December 7, 1978, by offering a materially false financial statement upon which Bank reasonably, yet detrimentally relied. Bank also contends that Pappas made false representations with respect thereof.

Bank also moves for costs, based on alleged unjustifiable delays in trial settings caused by Pappas.

At the close of trial, the Court directed the parties to file Suggested Findings of Fact and Conclusions of Law within three weeks of their receipt of the transcript. The transcript was filed on February 2, 1982; and the Court reminded the parties on March 26, 1982, that they were to file Suggested Findings and Conclusions. To

date, neither party has so complied, although almost a year has passed since the trial. Pappas died on November 13, 1981. This pending adversary obstructs the closing of the estate. Accordingly, the Court proceeds to determine this matter.

## FINDINGS OF FACT

Having reviewed the transcript, exhibits, pleadings and the file herein, the Court finds as follows:

1. That this Court has jurisdiction over the parties and the subject matter; and that venue is proper.

2. That Pappas filed for Chapter 7 relief herein on May 22, 1980, and was discharged on December 18, 1980.

3. That Pappas began banking with Bank in 1965. Initially, he obtained small loans but through the years his line of credit grew. By late 1978 he had outstanding loans of about $74,000.00. Pappas used the loans to run his vending and amusement machine business. Since Pappas made large daily deposits from his business into his checking account, Bank frequently paid loan installments by setoff. Nevertheless, Pappas had a history of slow payment. In spite of this, Bank considered Pappas a good customer and repeatedly renewed his loans.

4. On December 7, 1978, Pappas had three outstanding loans with Bank. Bank renewed two delinquent installment notes and combined them into one $54,000.00 note. Bank also renewed a $20,000.00 demand note although it was not yet due. No new money was loaned. With respect to the $54,000.00 note, Bank had Pappas execute a security agreement encumbering inventory as additional security. Bank never perfected this security interest. The $20,000.00 note was at all times unsecured. Count 1 of Bank's complaint concerns the $54,000.00 note and Count 2 concerns the $20,000.00 note.

5. Bank asked Pappas for a financial statement on December 7, 1978. There was conflicting testimony regarding whether Bank required the financial statement as a condition precedent to renewing the loans. In any case, Pappas sat down with Bank officer Mullinax, and Mullinax filled out a financial statement by asking Pappas questions.

6. That the December 7, 1978 financial statement showed Pappas had a net worth of $554,000.00. Pappas valued his Leawood home at $250,000.00; his Parsons real estate at $60,000.00; and his business machinery and equipment at $300,000.00. Bank had an August 9, 1979 financial statement admitted into evidence, for comparison. It showed Pappas' net worth at $665,000.00. Pappas again valued his Leawood and Parsons real estate at $250,000.00 and $60,000.00 respectively. He valued his "vending machine business" at $400,000.00. On his bankruptcy schedules Pappas valued the Leawood home at $90,000.00 and he later sold it for $110,000.00. He testified that the house had depreciated considerably since the 1978 financial statement because of his inability to do maintenance and repairs. Pappas valued his Parsons property at $18,000.00 on his bankruptcy schedules. He also valued in his schedules, his inventory at $57,000.00. He testified, however, that he had $57,000.00 in equipment at the time of the bankruptcy petition, and no inventory, because it had all been sold or repossessed.

7. That Mullinax accepted Pappas' valuations unquestionably, although Mullinax knew said valuations were unstudied and not certified by Pappas' C.P.A. Mullinax approved the renewals before reviewing the financial statement or comparing it with previous statements.

8. That Mullinax violated Bank policy by approving the loan renewals without first referring the application to Bank's discount committee. Since the $74,000.00 in renewals exceeded ten percent of Pappas' net worth, Mullinax should have referred the application to the discount committee, which would then have either rejected the application or required additional security.

9. That there was conflicting testimony regarding whether Pappas represented that he owned adjoining lots in Parsons or

whether he represented that he owned just one. Pappas did not recall telling Mullinax that he owned two lots at a total value of $60,000.00. He testified that the Bank knew that his mother owned one of the lots, where she had lived for years. Mullinax testified in his deposition that Pappas said he owned both lots. At trial, Mullinax would not testify that Pappas made an express misrepresentation; but he testified that Pappas knew that Bank believed he owned both lots and that by failing to correct Mullinax's $60,000.00 valuation, Pappas misrepresented such by omission.

10. That although Bank contended that it had taken annual financial statements from Pappas in accordance with Bank policy, it could only produce one financial statement prior to the 1978 statement, and that was a 1972 statement. Bank contended that the other statements had been misplaced.

### CONCLUSIONS OF LAW

#### I.

Bank contends that the debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). That section states:
"§ 523. Exceptions to discharge.

*(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—*

\* \* \* \* \* \*

*(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—*

*(A) False pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;"*

Under Bankruptcy Rule 407, which continues in effect under the Code, the creditor objecting to a discharge has the burden of proving the facts essential to the objection. *Johnson v. Bockman,* 282 F.2d 544 (10th Cir. 1960).

■ As is set out in *In re Houtman,* 568 F.2d 651, 655 (9th Cir. 1978), there are five elements that the objecting creditor must prove and they are as follows:

(1) The debtor made the representations;

(2) That at the time he knew they were false;

(3) That he made them with the intention and purpose of deceiving the creditor;

(4) That the creditor relied on such representations;

(5) That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

In this case, the defendant, Pappas, had been banking with the plaintiff, Bank since 1965; had a history of slow payment but was still considered, according to testimony, a good customer.

■ The Court finds from all the evidence presented herein (testimony of 3 witnesses) that there was no reliance on the statements made to Mullinax since the Bank was almost as familiar with Pappas' financial status as he was, thus the Bank has failed to sustain the burden of proof and the debt is therefore discharged under § 523(a)(2)(A).

#### II.

The Bank contends that the debts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). That section states:
"§ 523. Exceptions to discharge.

*(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—*

\* \* \* \* \* \*

*(2) for obtaining money, property, services, or an extension, renewal or refinance of credit, by—*

\* \* \* \* \* \*

*(B) use of a statement in writing—*

*(i) that is materially false;*

*(ii) respecting the debtor's or an insider's financial condition;*

*(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and*

*(iv) that the debtor caused to be made or published with intent to deceive;"*

There was a written financial statement, respecting Pappas' financial condition, dated December 7, 1978. The first issue is whether it was materially false. Bank contends that the net worth shown thereon was materially false because three assets were over-valued. Pappas valued his Leawood home at $250,000.00 on both his 1978 and 1979 financial statements. Yet in his May 22, 1980 bankruptcy schedules he valued it at $90,000.00. He later sold it for $110,000.00. Pappas explained that the house had depreciated in the interim because of his inability to do maintenance and repairs.

■ Although the Court questions such a rapid depreciation, the Bank has not shown that the house was not worth $250,000.00 at the time of the 1978 statement. The objecting creditor has the burden of proving the essential elements of his objection. Bankruptcy Rule 407. It is possible that a house worth $250,000.00 in 1978 would sell for $110,000.00 two years later given the housing market and state of the economy in 1980. Therefore, the Court finds that there is insufficient evidence that Pappas' valuation of his Leawood home was materially false.

Likewise, Bank has failed to show that Pappas' $300,000.00 valuation of his business machinery and equipment was materially false. Bank presented no evidence controverting that valuation.

■ With respect to the Parsons property, however, the Court finds that the valuation was materially false. It is unclear whether Pappas expressly represented that he owned two adjoining lots in Parsons or that his property was worth $60,000.00. In any case, Pappas presumably read and undeniably signed the financial statement after Mullinax filled it out. He had the opportunity to correct the statement, but he did not. His silent acquiescence was a misrepresentation by omission. Pappas later valued his Parsons property at $18,000.00 on his schedules. Had he shown a similar valuation on his 1978 financial statement, his net worth would have been some $42,000.00 less than shown.

■ Given that the financial statement was materially false regarding the Parsons property, the next issue is whether Pappas had the intent to deceive. The Court can infer such an intent herein. Not only did Pappas greatly misrepresent the value of the property, but he misrepresented that he owned a lot he had never owned. Such a misrepresentation was more than reckless; it was intentionally deceitful.

■ The final issue is whether the Bank reasonably relied on the materially false statement or on the financial statement as a whole. Given all the testimony and exhibits, it appears that the Bank did not rely on the financial statement. Bank was unable to prove that it required the financial statement as a condition precedent to approval of the renewals. Moreover, Mullinax testified that he did not review or try to verify the financial statement; rather, he immediately approved the renewals upon Pappas' execution of the financial statement.

Furthermore, it appears that the overvaluation of the Parsons property and resulting overstatement of Pappas' net worth was of no effect in the Bank's decision to renew. Even with such an overstatement of Pappas' net worth, the loan amounts were greater than ten percent of Pappas' net worth. In such a situation, the Bank policy required that the loan officer refer the loan application to the discount committee, which would either deny the application or require additional security. Instead, Mullinax approved the application himself. The Court surmises that even if the financial statement had accurately stated Pappas' net worth, Mullinax would have still violated Bank policy and approved the renewals. Three Bank officers testified that Pappas was at all times considered a good customer. The evidence suggests that Pappas had been treated as an exception to Bank policy before.

The Court finds that the Bank did not get annual financial statements nor a financial statement each time Pappas renewed a loan.

■ The Court further finds that even if the Bank had relied on the financial statement, such reliance would have been unreasonable. Mullinax accepted valuations that were unquestionably off the top of Pappas' head, without verification or certification by Pappas' accountant. Mullinax violated the Bank's ten percent rule. He did not do a credit check nor confer with any other officers although two of the loans were seriously delinquent.

The Court concludes that the financial statement was of no consequence in the Bank's decision to renew the loans. Therefore, the Court finds that the Bank did not reasonably rely on the financial statement as required by 11 U.S.C. § 523(a)(2)(B)(iii). Accordingly, Pappas' debts of $47,856.25 and $22,566.67 are dischargeable.

### III.

■ With respect to the Bank's motion for costs for several trial setting delays caused by Pappas, the Court denies said motion. Pappas had a severe heart condition and was in and out of the hospital at the pertinent times. Pappas' delays were not caused by any bad faith or wrongful conduct. Moreover, neither party has clean hands herein. Both the Bank and Pappas have failed to file suggested Findings and Conclusions, which delayed this Court's decision. Accordingly, the Bank's motion for costs is denied.

### ORDER

Based upon the foregoing Memorandum Opinion, which constitutes Findings of Fact and Conclusions of Law, as required by Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure,

IT IS THEREFORE, BY THE COURT, ORDERED That the debts owed the plaintiff, Bank, by the debtor-defendant, Pappas, are dischargeable in bankruptcy.