In re William and Linda **REYNOLDS**, Debtors.

James **MAHAN**, Plaintiff,

v.

William and Linda **REYNOLDS**, Defendants.

Bankruptcy No. 84–458.
Adv. No. 85–007.

United States Bankruptcy Court,
D. New Hampshire.

May 7, 1985.

David M. Cline, The Legal Clinics, Jabez Fitch House, Portsmouth, N.H., for debtors.

Arthur Connelly, Manchester, N.H., for James Mahan.

## MEMORANDUM OPINION and ORDER

JAMES E. YACOS, Bankruptcy Judge.

This case is before the court upon an informal objection to dischargeability of a debt owing the plaintiff which was originally raised by letters to the clerk of this court on December 6, 1984 and January 14, 1985. The court treated these letters as instituting an adversary proceeding on dischargeability but required that they be amended in more formal form prior to trial. The defendants filed a motion to dismiss the objections when an amended complaint was not filed. At the hearing on May 6, 1985 all parties decided that it would be to their respective advantages to proceed immediately to trial under a stipulation that the sole ground for objection to dischargeability was an allegation that the incurring of the debt in question was by virtue of false pretenses and actual fraud on the part of the debtors under § 523(a)(2) of the Bankruptcy Code.

The court also noted at the outset of the hearing that the court independently would consider the question of discretionary dismissal of this case under § 707 of the Bankruptcy Code, if the facts introduced in the evidence indicated any abuse of the jurisdiction of the court by this Chapter 7 bankruptcy filing.

Testimony of witnesses and exhibits were received into evidence which established that on July 25, 1984 the debtors asked the plaintiff, James Mahan, who is the father of the debtor, Linda A. Reynolds, for the use of his TWA charge card to cover the cost of a trip to Scotland to visit some relatives. The plaintiff agreed to this use on the promise of the debtors that they would pay for the tickets charged on the card. The total charges amounted to $2,253.20.

The evidence further establishes that at or before the time of this transaction the debtors had substantial debts owing to various loan companies and other creditors, requiring some $600 a month in payments, and that the net take home pay available to the debtor averaged only $800 per month. There is no question that it was imprudent for the debtors to undertake this additional liability at that time. However, the evidence does not establish in my opinion actual intent to deceive or actual intent to defraud at the time of the July 25, 1984 transaction. Such actual intent *at that time* is requisite to establishing a ground for denying discharge under the quoted Code provision.

There clearly was a good deal of bad judgment and "wishful thinking" on the part of the debtors in telling themselves, and the plaintiff, that they would be able to cover this additional debt obligation. The court notes however that this was not a contrived deliberate scheme, but only occurred at the last minute when the planned trip on an essentially free U.S. Air Force flight fell through. In my judgment the debtors simply rationalized in their own minds that they could handle the obligation by restructuring some of their existing loan payments to absorb this additional obligation.

It is true that the debtors filed bankruptcy on November 21, 1984, a relatively short period after the transaction in question. The court finds that this occurred not only by virtue of their prior debt obligations, but also by virtue of the debtor, William J. Reynolds, being involuntarily separated from the U.S. Air Force in November of 1984. This in turn followed continued complaints to debtor's commander by the General Finance Company and the plaintiff as to their respective unpaid debts. The debtors were in fact in the process of trying to restructure their debts to a more manageable monthly pay-out schedule, but the creditor complaints resulted in the husband's

dismissal from the service and some loss of income and substantially increased living expenses.

The other side of this sad story is that the plaintiff and his wife have a very limited income, and have substantial support obligations for three children still living in their home, including a diabetic child who requires extra treatment and expense, and that this additional debt caused by the debtors has imposed a severe financial strain upon the plaintiff and his wife.

Notwithstanding the fact that both sides can "claim equity and fairness" for their respective positions in this matter, the legal conclusion is inescapable that there is no sufficient ground for denial of discharge of this debt under the provisions of § 523(a)(2) of the Bankruptcy Code due to the lack of any actual intent to deceive or defraud.

If it appeared to be feasible, the court would consider entering an order under § 707 of the Bankruptcy Code dismissing the bankruptcy case entirely, and giving the debtors the choice of filing a Chapter 13 plan to at least pay off some portion of this debt and their other unsecured liabilities. However, on the economic facts of life testified to in court it does not appear that any such repayment plan would be feasible, given the debtors' changed situation and increased expenses. Under a Chapter 13 plan the Mahan debt would have to share pro rata with approximately $10,000 in other debts as to any monthly payments the debtors could muster. This obviously would not produce any quick or meaningful relief to Mahan on his claim.

■ Remaining in this court under Chapter 7, the debtors will be discharged and relieved from their monthly debt load. This would seem to leave them with some surplus from the $600 a month they no longer need to pay creditors, from which they could make some payment to the plaintiff on a voluntary basis in the future. Nothing prevents a discharged debtor from so paying one creditor out of future earnings. If the family unit torn apart by this bitter dispute is worth preserving, if the parties think ahead to the time when the grandchildren will want to see their grandparents, and if both sides realize there is blame enough to go around in this matter, perhaps they can reach some accomodation on an equitable basis that this court can not compel as a matter of law.

WHEREFORE, in accordance with the foregoing findings and conclusions, it is

ORDERED, ADJUDGED and DECREED as follows:

1. The objection to the dischargeability of the debt of the plaintiff, James Mahan is hereby denied and said debt is determined to be dischargeable under the Bankruptcy Code.

2. The court declines to dismiss this proceeding, as a matter of discretion, under the provisions of § 707 of the Bankruptcy Code.