In re William McINTYRE; Elizabeth A. McIntyre, Debtors.

Anna C. MORIN

v.

Milton McINTYRE; Elizabeth McIntyre.

Civ. No. 85–583–D.

United States District Court, D. New Hampshire.

April 7, 1986.

Cantor, Floman, Russell & Johnson by Hanon W. Russell, Orange, Conn., Eaton, Solms, Mills & McIninch by Richard E. Mills, Manchester, N.H., for Morin.

Charles Meade, Manchester, N.H., for the McIntyres.

## MEMORANDUM OPINION

DEVINE, Chief Judge.

Anna C. Morin appeals an adverse decision of the bankruptcy judge (Honorable James E. Yacos) which held her pre-bankruptcy judgment[1] to be a dischargeable debt. The standard of review[2] this Court must follow is clear: The factual findings of the bankruptcy judge must be upheld unless they are clearly erroneous. Bankruptcy Rule 8013; *Briden v. Foley*, 776 F.2d 379 (1st Cir.1985). A finding is clearly erroneous " 'when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *United States v. United States Gypsum Company*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948), *quoted in D. Federico Company v. New*

*Bedford Redevelopment Authority*, 723 F.2d 122, 126 (1st Cir.1983).

Having in mind that it was for the bankruptcy judge alone to determine credibility, review of the transcript of evidence reveals the following to be relevant facts.

Defendant William McIntyre had known Wilfred A. Morin (husband of plaintiff, who is himself a non-party to this litigation) since childhood and had worked with his brother for six years. R. 76, 77.[3] In 1980, following ten years' employment with a materials handling equipment company, McIntyre decided to enter such business for himself. R. 76. McIntyre then approached Wilfred Morin, who was the owner of a gasoline service station sited on a corner lot in Milford, Connecticut. R. 25, 26, 78–81. Discussions were had concerning a written lease, but it developed that McIntyre became an oral tenant from month-to-month. R. 78, 79. McIntyre operated the rental premises as a gasoline service station and also displayed thereon industrial materials handling equipment for sale and rental. R. 79, 80.

Wilfred Morin was interested in the progress of McIntyre's business and came frequently upon the premises. R. 81, 82. Plaintiff herself had no input in the negotiations which led to the rental of the premises. R. 27, 28. In September 1981 the rupture of a diesel fuel tank caused a $1,200 loss to McIntyre's business, and in turn McIntyre advised Wilfred Morin that he either would require a long-term lease[4] or would have to raise working capital elsewhere. R. 82, 92. Mr. Morin then advised McIntyre of his interest in making an investment in McIntyre's business and suggested that McIntyre prepare for him some

1. The judgment was entered by default pursuant to Order of Judge Loughlin of this court. *See* Plaintiff's Exhibits 6, 7, and 8.

2. The plaintiff's motion for oral argument is denied. The Court has reviewed the transcript of the evidence, together with the exhibits and the briefs filed in behalf of the respective parties. The Court finds that "the facts and legal arguments are adequately presented in the briefs and record and the decisional process

would not be significantly aided by oral argument." Bankruptcy Rule 8012.

3. Where used in this Opinion, the term "R." followed by numbers indicates the pages of the transcript of evidence.

4. The purpose of a long-term lease on the premises would be to permit same to be used as security for a mortgage loan.

sort of written outline of his future plans with respect thereto. R. 42, 43, 82, 92. After several months, McIntyre prepared a "prospectus", Plaintiff's Exhibit 1, indicating therein his hope of raising a total of $95,000 for the purpose of expanding his business. R. 36–39, 46, 58, 87. Each item in said document was reviewed in detail with Mr. Morin, R. 56–64, 85, who took the documents [5] home to his wife, the plaintiff herein. R. 7.

Acting in reliance on her husband's glowing recommendations and her own individual reading of the documents he gave her, the plaintiff, without making further inquiry of McIntyre, invested $10,000 in his venture. Plaintiff's Exhibit 2; R. 7, 8, 11, 30, 31. In the ensuing six months, plaintiff inquired of her husband as to why no dividends were being paid, but she made no personal attempts to have contact with McIntyre. R. 14, 15. Unfortunately, McIntyre was not able to procure more than $25,000 of the hoped-for total investment of $95,000. R. 97–99. This sum was invested in equipment and operating expenses, but the business venture failed. R. 100, 101, 105, 107. McIntyre was forced to negotiate the sale of his personal residence to pay off the liens thereon, realizing but $800 from his equity of $48,000 in such residence. R. 89, 90.

▮▮▮ The relevant portion of the Bankruptcy Code upon which plaintiff relies renders nondischargeable any debt obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition," 11 U.S.C. § 523(a)(2)(A). Successful proof of a claim that a debt is nondischargeable under this section of the Bankruptcy Code requires proof of actual fraud, as contrasted with mere fraud implied in law. 3 *Collier on Bankruptcy* ¶ 523.08[5], p. 523–53 (1984). The elements of actual fraud include (1) a false representation by the debtor; (2) known to be false at the time it was made; (3) made with the intention and purpose of deceiving the creditor; (4) which was reasonably relied on by the creditor; and (5) which resulted in loss or damage to the creditor as the proximate result of the false representation. *In Re Leger*, 34 B.R. 873, 877 (Bankr.D.Mass. 1983). *See also Commonwealth of Massachusetts v. Hale*, 618 F.2d 143, 147 (1st Cir.1980); *In Re Salett*, 53 B.R. 925, 928 (Bankr.D.Mass.1985); *In Re Hill*, 44 B.R. 645, 646 (Bankr.D.Mass.1984).

▮▮▮ The burden of proof of each element of actual fraud is placed on the plaintiff by clear and convincing evidence, and such proof requires a showing of intentional wrong, as a mere failure to fulfill a promise to pay a debt cannot support a finding of fraud. *In Re Salett, supra* at 928. Before a discharge may be denied, there must be proof of actual intent at the time of the transaction. *In Re Reynolds*, 49 B.R. 51 (Bankr. D.N.H.1985).

▮▮▮ Thus viewed, it is clear that the plaintiff herein has failed to carry her burden of proof. As the bankruptcy judge succinctly detailed in the course of his opinion below, the evidence here establishes that the plaintiff acted in the main on representations made by her husband rather than by the defendant and that she did not choose to seek legal advice or even to herself inquire of McIntyre as to the actual probabilities of success of this business venture. In business, as is often unfortunately the case with affairs of the heart, there is always the belief that "hope will triumph over experience", but such belief is soon shattered upon the rocks of reality. Simply stated, the evidence here is to the effect that McIntyre believed in his venture and thought that he could (given the proper amount of investment) return dividends to those who invested with him. It could be found, and such finding would not be clearly erroneous, that he did not intend to deceive and, more importantly, the record here does not support a finding that plain-

---

**5.** McIntyre had also prepared a "subscription agreement", Plaintiff's Exhibit 2, which in general terms indicated that one share of preferred stock in his corporation was to be issued for each $100 investment therein.

tiff herself "reasonably relied" on the actions of McIntyre.

For the reasons hereinabove outlined, I find and rule that the appeal herein must be dismissed, and the findings of the bankruptcy judge below, determining that insufficient grounds exist for objection to dischargeability have been established, must be and are herewith affirmed.

SO ORDERED.