**In re Paul W. WALKER, d/b/a Burnsville Auto Parts and "72" Tire Company, Debtor.**

**KARGO, INC., Plaintiff,**

v.

**Paul W. WALKER, d/b/a Burnsville Auto Parts, Defendant.**

**Bankruptcy No. 80–10285. Adv. No. 80–1072.**

United States Bankruptcy Court, N.D. Mississippi, E.D.

April 29, 1983.

D. Russell Jones, Jr., Southaven, Miss., for plaintiff.

Duncan Lott, Langston & Lott, Booneville, Miss., for defendant.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

On June 26, 1980, debtor, Paul W. Walker, filed his voluntary chapter 7 petition in bankruptcy under the Bankruptcy Code of 1978. Under schedule A–3 attached to said petition debtor listed as a creditor having an unsecured claim without priority, inter alia, the aforementioned Kargo, Inc., plaintiff herein, for a claim in the amount of $2,100.00.

On August 11, 1980, plaintiff, Kargo, Inc., filed its complaint to determine the dischargeability of the aforementioned scheduled unsecured debt. The brief allegations of said complaint are as follows:

"1. Plaintiff is a Creditor of the Debtor.

2. Defendant induced Plaintiff to absorb nonsellable inventory and replace with new new inventory by false pretenses—11 USC 523(a)(2).

3. Said transaction occurred within ninety (90) days of Debtor's Petition in Bankruptcy.

4. Said Debtor obtaining property by fraud, knowing of Debtor's own insolvency with intention to file for Bankruptcy and with no intent whatsoever to recompense Plaintiff for goods delivered—11 USC 523(a)(4)."

Said complaint included the following prayer for relief:

"WHEREFORE, Plaintiff prays that the Court determine that the debt owed by the Debtor to it is non-dischargeable; that the Court determine the remaining issues and render judgment for Plaintiff for the amount of its debt; plus interest and attorney's fees; and that it have such other and further relief as is just."

On September 3, 1980, debtor/defendant filed his answer to said complaint.

On February 12, 1981, the trial of this adversary proceeding was conducted by the court. The court reserved its decision.

For some period of time prior to 1980, and continuing from January, 1980, at least through the month of April, 1980, defendant/debtor did business as Burnsville Auto Parts, a retail outlet for auto parts and related merchandise. Throughout said period of time defendant purchased wholesale auto parts and supplies from plaintiff/creditor, Kargo, Inc., as well as from another supplier called PDW. During the earlier portion of that time period, defendant purchased more supplies from PDW than from plaintiff. However, plaintiff's salesperson called on defendant at intervals approximating once each two weeks and sold to defendant approximately $200 worth of merchandise on the average at each such visit. Until approximately mid-April defendant might get behind from thirty to sixty days in his payments to plaintiff, but he would always catch up his payments and remain current on his payments until a controversy developed between the parties in or about the month of April.

In the meantime, plaintiff became dissatisfied with the slow moving sales of the brands of merchandise which he had purchased from "PDW". Defendant had discussed this problem with one of plaintiff's salesmen in late 1979, and he continued his discussions with another of plaintiff's sales-

men in early 1980. In March, 1980, defendant negotiated with one of plaintiff's salesmen for plaintiff to remove the slow moving PDW merchandise from defendant's auto parts place and to credit defendant's account in the amounts of the discounted values of such slow moving "offbrand" merchandise. At the same time defendant negotiated with plaintiff's said salesman for the purchase of popular brands of new merchandise from plaintiff in hopes that the better known brands, etc., would sell faster and enable defendant to improve his profit margins. Defendant placed an order for slightly in excess of $2,000.00 worth of such new merchandise and the new merchandise was delivered during the early part of April, 1980.

PDW filed one or more lawsuits against defendant soon after the new merchandise had been delivered by plaintiff. Such litigation compounded the growing financial problems of defendant. Defendant's assurances of payment to plaintiff for the fairly large order of new merchandise did not result in full payment of said account. However, either by virtue of credits for the slow moving merchandise aforementioned or by some other credits, the claim of $2,100.00 mentioned in the bankruptcy schedule was reduced to a balance of $1,828.58 by the time of the aforementioned trial of this adversary proceeding.

A conference between defendant, one of plaintiff's salesmen and a corporate officer of plaintiff in late April, 1980, resulted in an assurance by defendant that the subject account would either be paid by May 10 or else the merchandise would be returned to plaintiff. When such conference was conducted in late April, plaintiff knew that the store was no longer doing business and most of the parts inventory had been removed from the premises. Plaintiff contended at the trial that defendant had wasted such inventory, but defendant contended that he stored the principal part of the inventory in his garage. The record is silent as to the ultimate disposition of such inventory. Plaintiff did not have a security interest in said inventory, however.

Defendant signed his bankruptcy petition on May 9, 1980, but did not file same until June 26, 1980.

Plaintiff has predicated its allegation of false pretenses on 11 U.S.C. section 523(a)(2), the pertinent portion of which reads as follows:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal, or refinance or credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ..."

Plaintiff has predicated its allegation of fraud on 11 U.S.C. section 523(a)(4), which reads in pertinent part:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ..."

This court has considered the totality of facts and circumstances in this record, and has concluded that plaintiff has not sustained the heavy burden of proof which reposes on one seeking to prove false pretenses or fraud. Inasmuch as defendant was continuing to pay for his purchases from plaintiff up until the final purchase was made to replace slow moving inventory provided by another supplier, there is no showing that defendant was in such severe financial straits before the replacement merchandise was installed as to make imminent the filing of bankruptcy. Such developments as the institution of litigation by the other supplier after the new merchandise was in place seem to have precipitated the financial difficulties that ultimately led to the filing of the bankruptcy petition approximately two months later. Indeed, even after signing the bankruptcy petition on May 9, 1980, defendant did not file his bankruptcy petition until over six weeks later. This court is not convinced that either false pretenses or fraud has been es-

**358**

tablished by the requisite standard of proof. The prayer for non-dischargeability of plaintiff's claim should not be granted.

An appropriate order dismissing said complaint with prejudice will be entered.