**In re David A. SALETT, Debtor.**

**MEAT REQUIREMENTS COORDINATION, INC.,**
**Plaintiff,**

**v.**

**David A. SALETT, Defendant.**

**Bankruptcy No. 84-379-JG.**
**Adv. No. A84-185.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 18, 1985.

---

Richard McKenzie, Law Office of Herbert C. Kahn, Boston, Mass., for plaintiff.

Nina M. Parker, Satran, Reade & Marino, Boston, Mass., for defendant.

## MEMORANDUM

JAMES N. GABRIEL, Bankruptcy Judge.

The Plaintiff, Meat Requirements Coordination, Inc. ("MRC") seeks a determination that a $32,977.21 debt owed to it by the debtor, David Salett ("Salett" or "the debtor"), by reason of his guarantee of the debt of Bay International Corp. ("Bay International" or "Bay") is nondischargeable. The plaintiff also objects to the discharge of the debtor. Count one of the Complaint alleges that since Salett ordered meat for Bay International on April 9, 1981 without intending to pay for same, the debt was incurred under false pretenses and is nondischargeable under 11 U.S.C. § 523 (a)(2)(A). Count two alleges that Salett caused Bay International to give MRC a false financial statement, rendering the debt nondischargeable under 11 U.S.C. § 523(a)(2)(B). Count three alleges that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) because Salett incurred the debt through fraud while acting in a fiduciary capacity. Count four alleges that Salett incurred the debt through willful and malicious injury to the creditor and is nondischargeable under 11 U.S.C. § 523(a)(6). Count five seeks denial of the debtor's discharge under §§ 727(a)(4) and (a)(5) alleging that Salett's placement of the order was with intent to defraud MRC and that Salett has not satisfactorily explained the loss of an asset by reason of his transfer of his interest in his home to his wife in June 1981. The defendant's Answer generally denies all the allegations of the plaintiff's Complaint. A trial was held. Based on the documentary evidence and testimony, the Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

In June 1978 Bay International Corp., of which David Salett was president, applied to MRC for credit. MRC approved the application. In connection therewith David Salett executed a personal guarantee of the debts of Bay International Corp. to MRC. The application for credit requests the name and address of the company, the type of ownership, names of principal owners, a bank reference and three trade references. The application did not request any information about the financial condition of the applicant. MRC's president testified at trial that in approving the application he relied on the company's bank and trade references. On behalf of Bay, Salett executed a similar application in 1980. MRC never requested and Salett never provided MRC with a personal financial statement.

On April 3, 1981 Bay International ordered 475 boxes of frozen pork loins from MRC at a price of $32,977.21. The invoice provided that payment was to be made in 7 days and a 1½% late charge would be imposed for sums owing over 30 days. At the time of the order Bay had a buyer for the pork loins. The amount of the invoice remained unpaid past the seven day deadline. Bay received payment from the buyer but used the funds in the operation of its business and to pay down its bank line of credit. In May 1981 MRC called Salett to request payment. Salett responded that he was having business difficulties and that he would pay $200 installments towards the balance. Salett or Bay made five $200 payments in 1982 towards the outstanding balance. Salett testified that he did not know Bay would be going out of business in June when he placed the order in April 1981. As of February 1981, Bay International has a zero balance wih MRC. Since 1979 it had purchased over $500,000 worth of meat from MRC excluding the unpaid April 1981 order.

In March and April 1981 Bay repaid David Salett approximately $120,000 on demand notes executed in 1980. Bay paid Patricia Gatto $25,000 on April 30, 1981 on a December 1979 demand note. Bay paid $10,000 to S. Waldman on April 27, 1981 on a July 1980 demand note. Bay paid Mark Brass $1,000 on April 27, 1981 on a 1980 demand note. Bay paid Ellissa Salett $5,000 on April 30, 1981 to satisfy a September 1980 demand note. Bay paid $5,000 to Marsha Colosaco on April 30, 1981. Bay paid $10,000 to Herbert Sosna on April 30, 1981 to satisfy a September 1980 demand note. All of the above-mentioned individuals were friends or relatives of Salett who had made loans to the company. In April 1981 Salett was seeking refinancing for the company.

Salett transfered his interest as a tenant by the entirety in his residence located in Waban, Massachusetts to his wife in June of 1981. At this time the house had a fair market value of $117,000 and mortgages on the house totalled $135,000. Bay ceased operations on June 1, 1981, and filed a chapter 7 bankruptcy petition thereafter.

In Count one of its Complaint, the plaintiff seeks to except the debt from discharge under 11 U.S.C. § 523(a)(2)(A) which provides as follows:

"(a) A discharge ..... does not discharge an individual debtor from any debt—...

(2) for obtaining money, property, services, or an extension, renewal or refinance of credit by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, ..."

11 U.S.C. § 523(a)(2)(A) (Supp.1984).

To prevent discharge under this section, the creditor must prove that the debtor made knowing false representations with intent to deceive the creditor, and that the creditor relied to his detriment as a result of the representation. *In re Simpson,* 29 B.R. 202, 209 (Bankr.W.D.Iowa 1983). The

plaintiff bears the burden of proving each element by clear and convincing evidence. *In re Vissers,* 21 B.R. 638, 639 (Bankr.E.D. Wis.1982). Proof of actual fraud requires a showing of intentional wrong. A failure to fulfill a mere promise to pay a debt cannot support a finding of fraud. *In re Simpson,* 29 B.R. 202, 209 (Bankr. W.D. Iowa 1983); *In re Collins,* 28 B.R. 244 (Bankr.W.D.Okla.1983). By itself, a failure to pay for goods ordered on credit is not fraudulent. *In re Lieberman,* 14 B.R. 881 (Bankr.E.D.Va.1981). A debtor's history of payments to a supplier and his financial condition are relevant in determining whether he intended to pay for merchandise at the time it was ordered. *In re Walker,* 29 B.R. 355, 358 (Bankr.N.D.Miss. 1983). Where a debtor continues to pay for his purchases up until the final purchase, it is difficult for the creditor to establish fraud. *Id.* at 355. Only where one purchases goods on credit knowing he does not intend to pay for the goods or knowing he is unable to comply with the payment requirements of the contract, does he fraudulently obtain the goods, making the debt nondischargeable. *Matter of Artrip,* 27 B.R. 54, 56 (Bankr. M.D.Fla.1983); *In re Schartner,* 7 B.R. 885, 888 (Bankr.N.D. Ohio 1980).

The plaintiff has not sustained its burden on Count one. It did not show through clear and convincing evidence that Salett, as president of Bay International, and guarantor of the debt to MRC, did not intend to pay for the meat when ordered from the plaintiff on April 9, 1981. Throughout the years of dealings between the parties Bay International and Salett had an excellent payment history with MRC. The final purchase in April 1981 is the sole outstanding debt. Moreover, Salett personally paid $1,000 toward the debt after Bay International went out of business. Bay intended to pay for the goods when the order was placed as it had a buyer for the meat as of the date of the order.

The plaintiff argues that the various payments of loans to insiders of Bay International in the spring of 1981 warrants the inference that Salett intended to close the business prior to the order from MRC, and had no intention of paying for the meat when ordered. Such an inference is not permissible. Bay International did not cease operations until June 1981, one and one half months after the MRC order. Bay International paid most of the debts to relatives and friends of Salett in very late April 1981,[1] three weeks after the MRC order. The plaintiff did not introduce any evidence of Bay's financial condition at the time of the order. Bay's chief creditor, the Merchants Bank, did not demand payment on its revolving credit arrangement until some time in May 1981. Therefore, the Court is unable to find that Salett already had made the decision to close Bay International as of the date of the order and did not intend to pay for the supplies when ordered.

Count two of the Complaint seeks a determination that the debt of Salett is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) alleging MRC extended credit based on a materially false financial statement dated November 24, 1979 submitted by Salett concerning financial condition of Bay International which the creditor reasonably relied upon in shipping $32,977 worth of meat. "Section 523(a)(2)(B) does not cover every material statement of fact made in writing to the creditor to induce the credit. It is confined in its application to statements respecting the financial condition of the debtor or of an insider." *L. King, 3 Collier On Bankruptcy,* ¶ 523.09, at 523–64 (15th ed. Supp. 1984). The statement must be with respect to the debtor's financial condition or that of an insider, which includes a corporation of which the debtor is a director, officer or person in control. 11 U.S.C. § 101 (28)(A)(iv) (Supp. 1984). It is also irrelevant that another entity received the benefit from the false

financial statement. *L. King, 3 Collier On Bankruptcy,* ¶ 523.09, at 523–66 (15th ed. Supp.1984).

■ The creditor has not sustained its burden under this exception to discharge because the application for credit cannot be considered a statement concerning the financial condition of the insider, Bay International Corp. The application does not request any financial information about the company. The only items of information sought are the owner's identity, a bank reference, and a trade reference. There is no request for a statement of assets and liabilities or other relevant facts concerning financial condition. Accordingly, the debt does not fall within the false financial statement exception to discharge.

■ Count three seeks a determination that Salett's having ordered the meat with knowledge that the company was unable to pay for same constituted "fraud or defalcation while acting in a fiduciary capacity." Section 523(a)(4) creates an exception to discharge for fraud or defalcation by one who has a fiduciary relationship with a creditor. The debt must have been incurred by the debtor acting in that capacity while as fiduciary to the creditor. *L. King, 3 Collier On Bankruptcy,* ¶ 523.14 at 523–115 (15th ed. Supp. 1984). "... [T]he commonplace frauds of the ordinary debtor are not within clause (4)." *Id.* at 523–110–11 (15th ed. Supp. 1984). Here, there was no fiduciary relationship between Salett and MRC and the debt cannot fall within this exception.

■ Count four of the Complaint seeks a determination that the acts of the debtor in ordering the inventory with knowledge of his and his company's inability to pay for same makes the debt one for willful and malicious injury by the debtor to another entity, which is excepted from discharge under 11 U.S.C. § 523 (a)(6). A

---

**1.** These payments are not voidable preferential transfers by Salett, but may have been preferential payments by the corporation, which as a debtor, is not before me. Only the chapter 7 case of the individual, David Salett, is before the Court.

debt arising from unlawful conversion of the property of another is nondischargeable under this section. 124 Cong. Rec. H 11, 095–6 (Sept. 28, 1978). Mere failure to pay over money owed on a contract does not constitute willful and malicious conversion. In the present case, the evidence is insufficient to permit a finding that Salett converted property of the plaintiff. In contrast, the plaintiff voluntarily shipped the inventory to Bay on credit, thereby assuming the risk of non-payment. The instant situation presents a case of mere breach of contract as opposed to conversion.

█ Finally Count five seeks denial of the discharge on the ground that the debtor has failed to satisfactorily explain the loss of his house as an asset of his estate. The debtor explained that he transferred his interest in his house to his wife in June of 1981. At this time the encumbrances on the property exceeded its fair market value of the property by $18,000. In light of the evidence that the debtor had no equity in the house as of the date of the transfer, I find that there has been no loss of assets or deficiency of assets to meet the debtor's liabilities within the meaning of § 727(a)(5). In addition Count five seeks denial of the discharge pursuant to §§ 727(a)(4) and 727(a)(2)(A). The plaintiff has not introduced any evidence, however, that the debtor transferred, removed, or destroyed property of his estate. There was no evidence of a false oath by the debtor and the creditor has not proved a case under § 727(a)(2)(A).