**In re William (Nmi) GERING, Erma Jane Gering, Debtors.**

**MID–STATES MILLWORK, INC.; Techni-Kote, Inc.; Careco Systems, Inc.; Morrison Welding & Fabrication; Thomas D. Kelley, Jr.; and Jack E. Gaumnitz, Plaintiffs,**

v.

**William (Nmi) GERING, Erma Jane Gering, Defendants.**

Bankruptcy No. 80–20876.
Adv. No. 80–0237.

United States Bankruptcy Court,
D. Kansas.

Feb. 4, 1987.

 

Jim R. Petrie, Kansas City, Mo., for Techni-Kote, Inc.

Thomas D. Kelley, Jr., pro se.

F. Stannard Lentz, Mission, Kan., Trustee.

Michael P. White, of Polsinelli, White & Vardeman, Kansas City, Mo., former attorneys for plaintiffs.

Jerry J. Hess, Overland Park, Kan., for debtors/defendants.

## MEMORANDUM OPINION
## AND ORDER

IN COMPLIANCE WITH UNITED STATES DISTRICT COURT'S ORDER REMANDING BANKRUPTCY COURT'S DECISION DENYING MOTION TO ALTER OR AMEND FOR LACK OF JURISDICTION

BENJAMIN E. FRANKLIN, Chief Judge.

As the above title suggests, the circumstances surrounding this case are complex, to say the least. A brief outline of the various steps the case has taken to reach this point is helpful to the full understanding of this opinion.

This matter initially came on for trial on May 3, 4, 5, 6, 7, and 10, 1982, pursuant to plaintiffs' Complaint objecting to discharge and Complaint to determine dischargeability of debts. Plaintiffs, Mid-States Millwork, Inc.; Techni-Kote, Inc.; Careco Systems, Inc.; Morrison Welding & Fabrication; Thomas D. Kelley, Jr.; and Jack E. Gaumnitz, appeared by their attorneys of record, Michael P. White and Thomas D. Kelley, Jr. Debtors/defendants, William and Erma Jane Gering, appeared in person and by their attorney of record, Jerry J. Hess.

The plaintiffs' third amended complaint was comprised of twelve counts under 11 U.S.C. § 727 and 11 U.S.C. § 523. At the conclusion of the plaintiffs' case, the following counts were dismissed: Counts 1, 2, 3, and 4 upon defendants' motion; Counts 7 and 10 dismissed upon plaintiffs' motion; and Count 11 dismissed by stipulation. In addition, the first paragraph of Count 5 was stricken upon plaintiffs' motion and

the last two paragraphs of Count 6 were stricken by stipulation. Finally, upon defendants' motion, the Court dismissed all counts against Erma Jane Gering.

The following counts remained against William Gering: Count 5 under section 727(a)(5); Count 6 under section 523(a)(2)(A); Count 8 under sections 523(a)(4) and 523(a)(2)(A); Count 9 under section 523(a)(2)(B); and Count 12 under section 727(a)(4)(C). The Court, after the trial, took the case under advisement, and directed the parties to submit proposed findings of fact and conclusions of law.

On February 25, 1983, the Court issued a memorandum opinion and order. The decision articulated ten specific findings of fact. The decision found against the debtor/defendant on Count 5 and denied discharge under section 727(a)(5). The Court, however, did not address Count 6, Count 8, Count 9, and Count 12 because it was unnecessary in light of the denial of discharge under section 727(a)(5).

On March 7, 1983, the plaintiffs filed a Motion to Alter or Amend Judgment. In support of the motion, the plaintiffs stated the following:

1. On February 25, 1983 this court filed its Memorandum Opinion deying the discharge of William Gering under 11 U.S.C. § 727(a)(5).

2. In their *Third Amended Complaint to Determine Dischargeability and For Judgment* filed November 13, 1981 the Plaintiffs prayed for this relief as well as monetary judgments, attorneys fees, the surrender of the Techni-Kote, Inc. formulas in the hands of the trustee to Mid-States Millwork, Inc. and other appropriate relief.

3. Under Rule 42(d)(3)(B) of the Local Rules of the Court for this District a bankruptcy judge has the power to submit findings, conclusions and a proposed judgment to the district judge.

4. This Court after its hearing of all the evidence which has been adduced in this proceeding is best qualified to submit findings, conclusions, and a proposed judgment regarding monetary damages,

attorneys fees and all other related proceedings.

5. It is in the best interests of judicial economy that this Court submit findings, conclusions and a proposed judgment regarding all related proceedings.

Wherefore, Plaintiffs pray for an alteration or amendment of the Courts judgment filed February 25, 1983 to determine monetary damages and attorneys fees, for an Order directing the trustee to surrender all Techni-Kote, Inc. formulas in his possession to Mid-States Millwork, Inc. and for other relief at Law or Equity which the Court may deem proper.

The Motion to Alter or Amend Judgment came for a hearing on April 5, 1983. Gregory D. Cox appeared on behalf of the plaintiffs. The Court denied the motion based upon concerns over the constitutionality of a bankruptcy court's jurisdiction to grant the relief requested. Furthermore, due to the denial of discharge, the Court found it unnecessary to make determinations under the § 523 counts.

The plaintiffs appealed the denial of the motion to the United States District Court for the District of Kansas. On October 17, 1983, the Honorable Dale E. Saffels, United States District Judge, submitted a Memorandum and Order addressing the jurisdiction issue, while allowing the bankruptcy judge's ruling on objection to discharge to stand. Judge Saffels concluded that this court had jurisdiction and, in part, ordered "... that the bankruptcy court's decision denying the motion to alter or amend is reversed insofar as it was based on the jurisdiction of the bankruptcy court and this case is remanded to the bankruptcy court for submission of findings, conclusions and a proposed order on the relief requested by appellant."

This Court is now ready to issue a Memorandum Opinion and Order in compliance with Judge Saffels' Order remanding its decision denying the plaintiffs' motion to alter or amend for lack of jurisdiction. The District Court's order is ambiguous. However, this Court assumes the order means

that this Court should issue findings on the rest of the plaintiffs' counts: Count 6 under section 523(a)(2)(A); Count 8 under sections 523(a)(4) and 523(a)(2)(A); Count 9 under section 523(a)(2)(B); and Count 12 under section 727(a)(4)(C). This Court will proceed accordingly.

## FINDINGS OF FACT

As noted above, this Court found ten extensive findings of fact on February 25, 1983. A restatement of the facts is necessary to fully understand the Court's resolution of Count 6, Count 8, Count 9, and Count 12. This Court found as follows:

1. That the Court has jurisdiction over the parties and the subject matter pursuant to Rule 42 of the United States District Court for the District of Kansas; and that venue is proper.

2. That William Gering was the owner and creator of various formulae used to coat metals. He developed these formulae over the years and in 1979 sought investments to produce these formulae. He incorporated Techni-Kote, Inc. (TKI) in the summer of 1979 along with Jude Manly and Richey Nelson. Plaintiff, Thomas D. Kelley, Jr., was the incorporating attorney. Gering, Manly, Nelson and Kelley were the initial shareholders of stock in TKI; Gering and Manly each holding 600 shares, Nelson holding 300 shares, and Kelley holding 100 shares.

3. That in an exclusive and irrevocable license agreement dated August 7, 1979 (Pl.Ex.# 1), licensors, Gering, Manly and Nelson conveyed to licensee, TKI,

all right, title and interest to the secret processes for the products they have developed for Techni-Kote, Inc., specifically, the products TKI–504/701 and TKI–1000; and, all derivatives of whatsoever nature, similar compounds and processes which they develop or have developed as a result of their research relating to the products, TKI–504/701 and TKI–1000.

The licensors covenanted to use these secret processes only in the context of the license agreement and to make said secret processes available to licensee, TKI, at all times.

4. That to induce investors, Gering had a TKI prospectus (Pl.Ex.# 7) published which described the attributes and potential of four formulae: TKI–1000, TKI–504/701, Pillow Web P and MC Paint. (See also Pl.Ex.# 4). Gering also had a brochure on Pillow Web P published (Pl. Ex.# 3). Kelley, Kostusik, and Gaumnitz, who Gering approached for loans or investments, all testified that Gering represented that TKI owned all four formulae and that they understood that Pillow Web P and MC Paint were part of the license agreement as antecedents or derivatives of TKI–1000 or TKI–504/701. In fact, a TKI financial statement dated October 30, 1979 (Pl.Ex.# 64) stated that TKI owned nine formulae. Gering testified that he did in fact represent or lead investors to believe that TKI owned Pillow Web P and MC Paint, although he believed they were his personal assets.

5. That Gering testified that in the summer of 1979, Manly told him of a two million dollar offer from a Mr. Settegast in Houston, Texas, to buy TKI and the formulae; and that at the time of the offer there had been no production of any of the formulae and no actual orders or customers. Gering further testified that he did not try to verify Manly's report of the Settegast offer because he relied on Manly's business acumen and role as TKI financial manager. Resumés attached to the TKI prospectus indicated that Gering had an M.B.A. from Golden Gate University, as well as a B.S. in mechanical engineering, while Manly had only a Bachelor's degree in business.

6. That Gering also testified that he used this purported two million dollar offer in valuing his 600 shares in TKI at $600,000 on two personal financial statements; one dated July 31, 1979 (Pl.Ex.# 31) and another dated November 1, 1979 (Pl.Ex.# 30). Gering and/or Manly also used this purported offer in valuing TKI's net worth on TKI financial documents. (See, e.g., Pl.Ex.# 64, balance sheet dated October 30, 1979).

7. That in his Chapter 7 schedules filed herein on August 26, 1980, Gering valued his 600 shares in TKI at zero. He testified that he learned in 1980 that there was no Settegast offer and that the shares were worthless because there was no current production or sales of TKI products. He listed the formulae for Pillow Web P and MC Paint as his personal assets and also gave them zero value because of no ongoing production or sales.

8. That according to Gering and Mickey Bennett, who was production manager of TKI, there was successful production and sales of TKI–504/701, Pillow Web P and MC Paint from January, 1980, when TKI's plant was established, to July, 1980, when TKI shut down.

9. That TKI's troubles began in January, 1980, when Kelley bought Manly's and Nelson's stock, thus becoming the majority shareholder. Gering found this situation untenable since he had invested years and money while Kelley had not put any money into TKI except to purchase shares. Subsequent negotiations between Gering, Kelley and the other shareholders fell through. Gering and Bennett threatened to take the formulae and set up shop elsewhere. On July 7, 1980, Gering and Bennett resigned from TKI (Pl.Ex.# 13). Gering has retained his 600 shares in TKI.

10. That Kelley and Kostusik testified that when they searched the office and files on the day after Gering's resignation, they found that the formulae, production manual, customer lists, customer correspondence, order lists and corporate records were missing. Gering and Bennett testified that they left all of this information in the office filing cabinets and told Kelley and Kostusik where it was. However, Gering also testified that he removed the formulae from a safety deposit box on July 7, 1980, and kept them at his home until he turned them over to the trustee pursuant to a court order of August 22, 1980, in Bankruptcy Case No. 80–20761. Gering further testified that he kept the production book at his home; and that the formulae were coded and only he could

interpret the codes. TKI production halted and was never resumed because it no longer had access to the formulae, codes and production manuals.

The Bankruptcy Court, after reciting its conclusions of law in the aforementioned case, thereafter made the following additional findings on pages 10 & 11 of its Memorandum Opinion:

From this overwhelming display of inconsistencies in Gering's testimony, the Court finds that Gering was an incredulous witness. This, coupled with the fact that his testimonal explanation was vague and uncorroborated, causes the Court to find his explanation of losses unsatisfactory. The Court therefore holds that Gering's discharge should be denied under 11 U.S.C. § 727(a)(5).

Plaintiffs objected to discharge under 11 U.S.C. § 727(a)(4)(C) and dischargeability under §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(4). Although this Court found sufficient evidence to deny dischargeability under several counts, this *Court finds that it is unnecessary to address those issues in light of the overwhelming evidence under § 727(a)(5).*

Accordingly, IT IS THEREFORE ORDERED That plaintiffs' objection to discharge under 11 U.S.C. § 727(a)(5) be and the same is hereby sustained. William Gering's discharge is DENIED. (emphasis added)

Based on the exhibits, testimony, briefs, memoranda and pleadings filed herein, the Court further finds:

11. The exclusive and irrevocable license agreement granted to Techni-Kote, Inc., the exclusive right to use, manufacture, sell and distribute four formulae and processes. The agreement provided that Jude Manly, Jr., William Gering and Richey Nelson were the originators of the formulae and processes. Furthermore, the formulae and processes were held as trade secrets to be used by only Manly, Gering, and Nelson in the context of the agreement. These representations were false because Mickey Bennett had knowledge of the formulae and processes. Furthermore,

Nelson and Manly did not originate the formulae and processes.

12. Gering represented to plaintiff, Jack E. Gaumnitz, that Techni-Kote, Inc. had purchased an oven, a conveyor system and related accouterments for $60,208.02 from Jemco. Gering gave Gaumnitz a Jemco invoice to substantiate the story. In fact, Gering knew that the items listed in the invoice were not the items and equipment which Techni-Kote, Inc. was to actually receive from a company called Careco Systems. Furthermore, Gering knew that the items and equipment only had a value of $24,000.

13. Gaumnitz entered into a purchase agreement with Techni-Kote, Inc., for the purchase of the property for $60,208.02.

14. Gaumnitz suffered a loss from this transaction of $28,930.35.

15. Gering drafted financial statements for the purpose of obtaining credit. Gering falsely represented on his financial statements that he had antique furniture worth $24,500 and jewelry worth $5,300. However, his bankruptcy schedules reflected that the furniture was only worth $5,000 and that Zales Jewelry Co. owned the greater part of the jewelry. Furthermore, Gering's statements reflect stocks and bonds worth $600,000. However, Gering knew that such valuation had no basis in fact.

## CONCLUSIONS OF LAW

Pursuant to Judge Dale E. Saffels' October 17, 1983 Order, this Court must issue findings on the following remaining counts: Count 6 under section 523(a)(2)(A), Count 8 under sections 523(a)(4) and 523(a)(2)(A); Count 9 under section 523(a)(2)(B); and Count 12 under section 727(a)(4)(C).

A. *Count 6 under Section 523(a)(2)(A).*

For convenience and accuracy sake, this Court will restate verbatim the plaintiffs' allegations according to their proposed findings of fact and conclusions of law. The plaintiffs allege:

54. This Count and claim is based upon 11 U.S.C. Section 523(a)(2)(A) which provides that a discharge under Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt for obtaining money, services or an extension, renewal, or refinance of credit, by false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

55. To satisfy itself that the debtor made fraudulent representations to the creditor sufficient to render a debt non-dischargeable under the Bankruptcy Act, the Court must find that the debtor made the representation, the debtor knew the representation was false at the time it was made, there was intent to deceive, reliance upon the representation by the creditor and damage or injury to the creditor. *In re Hansen*, 7 B.R. 82, (Ariz. 1980).

56. Defendant William Gering knowingly represented to Mid-States Millwork, Inc., Thomas D. Kelley, Jr., and Techni-Kote, Inc., that William Gering, Jude E. Manly, Jr., and Richey Nelson were the originators, creators and owners of the four (4) formulae and processes identified herein and that such formulae and processes were held as trade secrets.

57. Defendant William Gering knew that such representations were false at the time that they were made and the representations were made with the intent to deceive and with the intent to have Mid-States Millwork, Inc., Thomas D. Kelley, Jr. and Techni-Kote, Inc., rely on such representations in that, as evidenced by Defendant William Gering's course of deceptive conduct, Defendant William Gering planned to and did implement a course of conduct which he thought would enable him to remove certain formulae and processes from Techni-Kote, Inc., and which he would apply to his own use and benefit to the substantial damage of Mid-States Millwork, Inc., Thomas D. Kelley, Jr. and Techni-Kote, Inc.

58. Defendant William Gering guarantees of corporate indebtedness of Techni-Kote, Inc., of Mid-States Millwork, Inc.'s loan to Techni-Kote, Inc., and his direct obligations to Thomas D. Kelley, Jr., are not dischargeable and this Court further holds that Mid-States Millwork, Inc., Thomas D. Kelley, Jr. and Techni-Kote, Inc., have judgment against Defendant William Gering in the amount of Two Million and no/100 Dollars ($2,000,000.00) together with interest and costs.

■ The Court finds that the foregoing allegations are complicated, to say the least, and, at times, illogical. However, it will attempt to apply section 523(a)(2)(A). The elements of section 523(a)(2)(A) are: (1) The debtor knowingly committed *actual fraud*, false representations, or false pretenses; (2) the debtor intended to deceive the plaintiffs; (3) the plaintiffs reasonably relied upon the debtor's conduct; and (4) the reliance proximately caused damages to the plaintiffs. *In re Ridgway*, 24 B.R. 780 (Bankr.D.Kan.1982); and *In re Pappas*, 23 B.R. 715 (Bankr.D.Kan.1982).

■ The plaintiffs satisfied the first element. The exclusive and irrevocable license agreement granted to Techni-Kote, Inc., the exclusive right to use, manufacture, sell and distribute the four formulae and processes. The agreement provided that Jude Manly, Jr., William Gering and Richey Nelson were the originators of the four formulae and processes. Furthermore, the formulae and processes were held as trade secrets to be used by only Manly, Gering, and Nelson in the context of the agreement.

The representations were false because Mickey Bennett had knowledge of the formulae and processes. Furthermore, Nelson and Manly did not originate the formulae and processes.

■ The plaintiffs also satisfied the second element. The defendant intended to deceive the plaintiffs. Actual intent is extremely difficult to prove; however, the Court can infer intent from the knowingly false statements. *In re Brewood*, 15 B.R.

211 (Bankr.D.Kan.1981). Under the circumstances, this Court elects to infer the intent.

■ The Court finds, however, that the plaintiffs failed to show the third and fourth elements: (3) reasonable reliance and (4) damages caused by the reliance. The plaintiffs did not give up something or invest because they thought Manly and Nelson were originators and that no one else knew of the formulae and processes. On the contrary, the plaintiffs would have acted exactly the same if they had known the truth. The Court finds that there has been no showing of reliance or damages as a result thereof.

In the final analysis, the Court finds that the plaintiffs in Count 6 failed to sustain their burden of proof by clear and convincing evidence. *Meat Requirement Coordination, Inc. v. Salett*, 53 B.R. 925 (Bankr. Mass.1985).

**B.** *Count 8 under Sections 523(a)(4) and 523(a)(2)(A).*

According to the proposed conclusions of law, the plaintiffs Jack E. Gaumnitz and Careco Systems, Inc., allege as follows:

59. This Count and Claim is based upon Section 253(a)(2)(A) [sic] recited above and Section 523(a)(4) which provides that a discharge under Section 727, 1141 or 1328(b) does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity.

60. Plaintiff Jack E. Gaumnitz has suffered damage in the amount of Twenty-Eight Thousand Nine Hundred Thirty and 05/100 Dollars ($28,930.05) and Careco Systems, Inc., has suffered damage in the amount of Six Thousand Seven Hundred Twenty-Four and 56/100 Dollars ($6,724.56) based upon Defendant William Gering's fraudulent representations specified herein which Defendant William Gering knew were false at the time they were made and which he made with the intent to deceive and cause Plaintiffs Jack E. Gaumnitz and Careco Systems,

Inc., to rely on which they did to their damage.

61. Defendant William Gering's course of dealings and fraud were committed while he was acting in his fiduciary capacity as a member of the Board of Directors of Techni-Kote, Inc.

62. Defendant William Gering shall not benefit from his fraud and deception and shall be held accountable for his guarantee of the obligation of Plaintiff Jack E. Gaumnitz and Careco Systems, Inc., and, further, the Court holds that Plaintiff Jack E. Gaumnitz have judgment against Defendant William Gering in the amount of Twenty-Eight Thousand Nine Hundred Thirty and 05/100 Dollars ($28,930.05) together with interest and costs thereon; Plaintiff Careco Systems, Inc., have judgment against Defendant William Gering in the amount of Six Thousand Seven Hundred Twenty-Four and 56/100 Dollars ($6,724.56) together with interest and costs thereon; and, Plaintiff Techni-Kote, Inc., have judgment against Defendant William Gering in the amount of Thirty-Five Thousand Six Hundred Fifty-Four and 70/100 Dollars ($35,654.70) together with interest and costs.

A brief reading of the above conclusions of law reveals that Count 8 has several allegations under one heading. The Court will address each allegation separately.

### 1. Gaumnitz' claim and section 523(a)(2)(A)

The Court finds that plaintiff Gaumnitz satisfied the first element: fraud, false representation, or false pretenses.

Gering represented to plaintiff Jack E. Gaumnitz that Techni-Kote, Inc., had purchased an oven, a conveyor system and related accouterments for $60,208.02 from Jemco. Gering gave a Jemco invoice to Gaumnitz to substantiate his story. In fact, Gering knew the statement he made was false. Gering knew that the items listed in the invoice were not the items or equipment which Techni-Kote, Inc. was to actually receive from a company called Careco Systems, Inc. Furthermore, Gering knew that the items and equipment only had a value of $24,000.

Gaumnitz also has shown the second element of intent. The Court infers the requisite intent from the knowing false statements. *See In re Brewood*, 15 B.R. 211 (Bankr.D.Kan.1981). Under the circumstances, the Court must find that Gering intentionally deceived Gaumnitz.

In addition, the Court finds that Gaumnitz satisfied the third element of reasonable reliance. The reliance must be "reasonable" because protection of the debtor's fresh start is more important than protection of creditors who act unreasonably. *Carini v. Matera*, 592 F.2d 378 (7th Cir. 1979). Gaumnitz entered into a purchase agreement with Techni-Kote, Inc., for the purchase of the property for $60,208.02. This reliance was "reasonable".

Finally, Gaumnitz has proved the final element: damages. Gaumnitz suffered a loss of $28,930.35 after selling the Careco Systems equipment. As such, Gering owes Gaumnitz $28,930.35 which is nondischargeable under section 523(a)(2)(A).

### 2. Gaumnitz' Claim and Section 523(a)(4)

Plaintiff Gaumnitz also claims that the facts just discussed fall within section 523(a)(4). Section 523(a)(4) excepts from discharge any debt "(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." *See also* 3 Collier on Bankruptcy ¶ 523.14 (15th ed. 1986). Specifically, Gaumnitz appears to argue fraud by a fiduciary.

This Court, however, finds that section 523(a)(4) does not apply in that there is no fiduciary relationship between Gaumnitz and Gering.

### 3. Careco Systems, Inc. Claim and Sections 523(a)(2)(A) and 523(a)(4)

As for 523(a)(4), the Court again finds there was no fiduciary relationship. Furthermore, the Court finds the record void of any evidence of fraud for purpose of 523(a)(2)(A) or for that matter, the fraud referred to in (a)(4).

C. *Count 9 under Section 523(a)(2)(B).*

■ According to their conclusions of law, plaintiffs, Techni-Kote, Inc. and Thomas D. Kelley, Jr, allege as follows:

63. This Count and Claim is based upon Section 523(a)(2)(B) referred to hereinabove.

64. Defendant William Gering gave his false financial statements stated November, 1979, and July, 1979, and which reflected materially false information concerning Defendant William Gering's financial condition and which Defendant William Gering gave to Techni-Kote, Inc., and Thomas D. Kelley, Jr., with the intent that such financial statements be relied upon and with the intent that such financial statements deceive Techni-Kote, Inc., and Thomas D. Kelley, Jr.

65. Defendant William Gering's guarantee of corporate indebtedness of Techni-Kote, Inc., are not discharged; Defendant William Gering's obligations to Thomas D. Kelley, Jr., are not discharged; and, further, this Court holds that Techni-Kote, Inc., have judgment against William Gering in the amount of Two Million Ninety-Two Thousand One Hundred Forty-Five and 09/100 Dollars ($2,092,145.09) and Thomas D. Kelley, Jr., have judgment against defendant in the amount of Eighteen Thousand One Hundred Thirty-Seven and 83/100 ($18,-137.83) together with interests and costs.

Section 523(a)(2)(B) provides that a discharge under section 727, 1141 or 1328(b) does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit; to the extent obtained by—

　　*　　*　　*　　*　　*　　*

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ...

*See also* 3 Collier on Bankruptcy ¶ 523.09 (15th ed. 1986).

The Court finds that the plaintiffs, Kelley and Techni-Kote, have shown the first, second and third elements: (1) a statement in writing, (2) materially false, (3) respecting debtor's financial condition. Gering drafted financial statements for the purpose of obtaining credit. Gering represented on his financial statements that he had antique furniture worth $24,500 and jewelry worth $5,300. However, his bankruptcy schedules reflected the furniture was only worth $5,000 and that Zales Jewelry Company owned the greater part of the jewelry. Furthermore, Gering's statements reflect stocks and bonds worth $600,000. However, Gering knew that such valuation had no basis in fact.

This Court finds, however, that there is no evidence on the final two elements: (4) reasonable reliance by the creditors and (5) intent to deceive *these plaintiffs.* The false financial statements were used to get a loan from Columbia Union National Bank. The plaintiffs herein did nothing in reliance on the statements. In fact, Techni-Kote was the institution that benefitted from the loan. This Court cannot see how section 523(a)(2)(B) applies here to any of the plaintiffs in Count 9. Furthermore, the Court finds that the plaintiffs failed to sustain their burden of proof by clear and convincing evidence. *Meat Requirement Coordination, Inc. v. Salett,* 53 B.R. 925 (Bankr.Mass.1985).

D. *Count 12 under 727(a)(4)(C).*

The Court finds it is not necessary to make a determination under § 727(a)(4)(C) since it previously found the debt not dischargeable as to Count 5 and denied the defendant's discharge under section 727(a)(5), which the District Court affirmed. Thus, Count 12 is moot in that the discharge has already been denied.

This Memorandum shall constitute my Findings of Fact and Conclusions of Law

under Bankruptcy Rule 7052 and Rule 52(a) of the Federal Rules of Civil Procedure.

## ORDER

Based on the Memorandum Opinion set out above, IT IS, BY THE COURT, ORDERED with regard to Count 6 of the Complaint filed herein that judgment be for the defendant, William Gering, and against the plaintiffs, Mid-States Millwork, Inc., Thomas D. Kelley, Jr., and Techni-Kote, Inc.

IT IS FURTHER, BY THE COURT, ORDERED with regard to Count 8 of the Complaint, that judgment be for the plaintiff, Jack E. Gaumnitz, and against the defendant, William Gering, in the amount of $28,930.35 plus 9% interest from the date of this Order, and said amount is not dischargeable under § 523(a)(2)(A).

IT IS FURTHER, BY THE COURT, ORDERED with regard to Count 9 of the Complaint that judgment be for the defendant, William Gering, and against the plaintiffs, Techni-Kote, Inc. and Thomas D. Kelley, Jr.

IT IS FURTHER, BY THE COURT, ORDERED with regard to Count 12 of the Complaint that it is not necessary for the Court to rule since the defendant, William Gering's discharge was denied under § 727 in the Court's Memorandum Opinion filed February 25, 1983. This Count is moot.

IT IS FURTHER, BY THE COURT, ORDERED That the trustee, F. Stannard Lentz, is directed to turn over the formulas in his possession to Thomas D. Kelley, Jr., an officer in the corporation, Techni-Kote, Inc., to be held on behalf of said corporation.