United States Court of Appeals,

Fifth Circuit.

No. 90–3891.

In the Matter of Dean Philip ALLISON and Phyllis Cohen Allison, Debtors.

Dean Philip ALLISON and Phyllis Cohen Allison, Appellees,

v.

Crescentia R. ROBERTS, Appellant.

May 12, 1992.

Appeal from the United States District Court For the Eastern District of Louisiana.

Before POLITZ, Chief Judge, HIGGINBOTHAM, Circuit Judge, and PRADO,[*] District Judge.

POLITZ, Chief Judge:

Crescentia Roberts, a creditor of bankrupt debtors Dean and Phyllis Allison, appeals the district court's ruling that the Allison's debt to Roberts is dischargeable in bankruptcy. We conclude that under the provisions of 11 U.S.C. § 523(a)(2)(A) the debt of Dean Allison is not dischargeable but that the debt of Phyllis Allison is.

Background

Roberts sold certain immovable property in New Orleans to the Allisons. The contract to sell the two residences called for credit sales, secured by second mortgages covering 80% of the purchase prices. The Allisons defaulted on the notes prior to taking bankruptcy. Citing 11 U.S.C. § 523(a)(2)(A), Roberts maintains that their debt to her should not be discharged in bankruptcy because the Allisons obtained her property through false pretenses, false representations, or actual fraud.

In the interim contract the Allisons agreed to limit the first, or primary mortgages on the properties to a maximum of 20% of the purchase price, thus assuring that Roberts would be fully secured for the credit portion. Prior to the closing, counsel for the Allisons mailed copies of the

[*]District Judge, of the Western District of Texas, sitting by designation.

proposed deeds and mortgages to George Blue, Roberts' attorney who was also her son-in-law. Blue promptly responded by calling for a revision of the instruments to include language which would "require that limit be placed on original and refinancing of 1st mortgage of 20% of value since we are financing 80% on 2nd." The documents produced by the Allisons' attorney at closing did not contain this language.

After hearing the testimony of those present at the closing, the bankruptcy court found that Blue refused to consummate the sales without the first mortgage limitations. Dean Allison agreed to the addition of the clauses. Apparently the clauses could not be added immediately because the secretary of Allison's counsel was at lunch. It was agreed that the clauses would be added upon her return and before the instruments were recorded. Thus assured, Roberts signed the deeds conveying her property to the Allisons. The limiting language was never added; in its place was an incomprehensible, meaningless provision.

On the very day that Dean Allison represented that the first mortgages would not exceed 20% of the market value he executed first mortgages for at least four times that amount, effectively negating Roberts' secured position. Roberts did not discover this until after the Allisons defaulted in payment and it became necessary for her to secure a judgment against them in state court for the unpaid balance. Based on these facts the bankruptcy court held that the debt was not dischargeable for Dean Allison but was dischargeable for his wife who was not present at the closing. The matter was appealed to the district court.

The district court found that the evidence of misrepresentation and fraud on the part of Dean Allison was purely parol evidence which, under Louisiana law, should not have been considered. The district court reversed the bankruptcy court's ruling as to Dean Allison, holding that the debt was dischargeable as to both Allisons. We now reinstate the disposition of this issue as made by the bankruptcy court.

Analysis

Bankruptcy court findings of fact are subject to the clearly erroneous standard of review and will be reversed only if, on the entire evidence, we are left with the definite and firm conviction that a mistake has been made. *Matter of Delta Towers, Ltd.,* 924 F.2d 74 (5th Cir.1991) (citing *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Conclusions of law are reviewed *de novo.* The creditor claiming nondischargeability has the burden of proving, by a preponderance of the evidence, that the debt is exempt from discharge. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

"The validity of a creditor's claim is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." *Grogan v. Garner,* 111 S.Ct. at 657–58 (citations and footnotes omitted).[1] The discharge exception provided by 11 U.S.C. § 523 does not discharge a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

Section 523(a)(2)(A) contemplates frauds involving "moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient." 3 *Collier on Bankruptcy* ¶ 523.08[4] (15th ed. 1989) (footnote omitted) (quoted in *Matter of Foreman,* 906 F.2d 123, 127 (5th Cir.1990)).[2] The misrepresentations must have been: (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were rel ied upon by the other party. *Collier,* supra (quoted in *Foreman* ). It is undisputed that the Allisons received "property,"

---

[1] The district court and the bankruptcy court both discussed Louisiana's parol evidence rule. Because the requisites for a nondischargeable debt have been defined in the Bankruptcy Code and federal precedent interpreting the Code, we have no occasion to resort to state law.

[2] *Foreman's* conclusion that the clear and convincing standard of proof applies to dischargeability issues was overruled by the Supreme Court in *Grogan.*

specifically real estate, from Roberts.

As to the first requirement, the bankruptcy court made the factual determination that Dean Allison effected an intentional and purposeful deception by feigning agreement to the first mortgage limit in order to get Roberts to sign the deeds of conveyance when, in fact, he had already made or was in the process of making arrangements for first mortgage indebtedness far in excess of that limit. Those factual findings are not clearly erroneous and based thereon we must conclude that Dean Allison's statements were knowing and fraudulent within the meaning of section 523(a)(2)(A).

The second requirement is that the misrepresentations be of past or current acts; a promise to perform acts in the future is not considered a qualifying misrepresentation merely because the promise subsequently is breached. *In re Bercier,* 934 F.2d 689 (5th Cir.1991) (citing *Collier*); *In re Roeder,* 61 B.R. 179 (Bankr.W.D.Ky.1986); and *In re Boese,* 8 B.R. 660 (Bankr.D.S.D.1981). A debtor's misrepresentations of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised. The bankruptcy court's finding that Dean Allison misrepresented the current fact of his future intention regarding the mortgages is also supported by the record.

The final criterion is that the creditor relied upon the representation. The nature of this reliance has been the subject of considerable debate. Several courts have held that the reliance must be reasonable.[3] Others consider reasonable reliance to be solely a requisite for exceptions claimed

---

[3]*In re Kimzey,* 761 F.2d 421 (7th Cir.1985); *In re Mullet,* 817 F.2d 677 (10th Cir.1987); *In re Hunter,* 780 F.2d 1577 (11th Cir.1986); *Calgagno v. Ezell,* 112 B.R. 146 (E.D.La.1990); *In re Fontenot,* 89 B.R. 575 (Bankr.W.D.La.1988); *In re Paolino,* 89 B.R. 453 (Bankr.E.D.Pa.1988); *In re Gering,* 69 B.R. 686 (Bankr.D.Kan.1987); *In re Hill,* 44 B.R. 645 (Bankr.D.Mass.1984).

under subparagraph (B) of section 523(a)(2), not of subparagraph (A).[4]   Indeed, section

523(a)(2)(B), addressing "use of a statement in writing," expressly recites reasonable reliance as an

essential element to the discharge exception.[5]   Section 523(a)(2)(A) contains no such requirement.

Further, the legislative history of these subparagraphs recites that "Subparagraph (A) is mutually

exclusive from subparagraph (B)."  H.R.Rep. No. 595, Cong., 1st Sess. 130–31 (1977), *reprinted

in* 1978 U.S.C.C.A.N. 5787, 6453.  Our colleagues in the Eighth Circuit fathomed why Congress

intentionally omitted the reasonable reliance language from subparagraph (A):

> Because creditors might induce debtors to falsify financial statements in order to make a debt nondischargeable, Congress explicitly required that nondischargeability under section 523(a)(2)(B) be premised upon a showing of reasonable reliance.  H.R.Rep. No. 595, Cong., 1st Sess. 103–31 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787.  As [*In re Fosco,* 14 B.R. 918 (Bankr.D.Conn.1981) ] explains, "the burden of proving reasonable reliance in section 523(a)(2)(B) to protect the debtor is not only left out of the language of section 523(a)(2)(A), but it cannot be justified by the policy concern expressed in the legislative history regarding false financial statements."

*In re Ophaug,* 827 F.2d 340, 343 (8th Cir.1987).

---

[4]*In re Ophaug,* 827 F.2d 340 (8th Cir.1987);  *In re Kroh,* 88 B.R. 972 (Bankr.W.D.Mo.1988); *In re Stewart,* 91 B.R. 489 (Bankr.S.D.Iowa 1988);  *In re Sobel,* 37 B.R. 780 (Bankr.E.D.N.Y.1984);  *In re Fosco,* 14 B.R. 918 (Bankr.D.Conn.1981).  Agreement with this position was expressed in dicta in *In re Christian,* 111 B.R. 118 (Bankr.W.D.Tex.1989).

[5]Subparagraph (B) denies discharge for a debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by,—
>
> (B) use of a statement in writing—
>
>> (i) that is materially false;
>>
>> (ii) respecting the debtor's or an insider's financial condition;
>>
>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit *reasonably relied;*  and
>>
>> (iv) that the debtor caused to be made or published with intent to deceive....

(Emphasis added).

Conversely, some courts have required reasonable reliance for subparagraph (A) exceptions on the theory that the statutory policy of giving debtors a fresh start outweighs the rights of creditors who act unreasonably. *See e.g., In re Newmark,* 20 B.R. 842 (Bankr.E.D.N.Y.1982); *see also* discussion in *In re Phillips,* 804 F.2d 930 (6th Cir.1986). The recent decision of the United States Supreme Court in *Grogan v. Garner* sheds new light on the appropriate interpretation of the goals of the Bankruptcy Code. *Grogan* overruled this court and other federal appellate courts by holding that creditors need only establish fraud by a preponderance of the evidence, not by clear and convincing evidence. In discussing the competing policies central to this issue, the Supreme Court placed the "fresh start" goal into perspective:

> The statutory provisions governing nondischargeability reflect a congressional decision to exclude from the general policy of discharge certain categories of debts ... [including] fraud. Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start. We think in unlikely that Congress, in fashioning the standard of proof that governs the applicability of these provisions, would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud.

*Grogan,* 111 S.Ct. at 659. Given this revised pronouncement from the Supreme Court, we find unpersuasive the asserted policy rationale for reading reasonable reliance into subparagraph (A). It is the " "honest but unfortunate debtor' " to whom the federal bankruptcy laws give refuge. *Id.* at 659 (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). Congressional concern for dishonest or manipulative debtors prompted the reasonable reliance requisite of subparagraph (B). We perceive no justification for interpretative revision of subparagraph (A). *In re Ophaug.* Both the plain letter and the legislative history of subparagraphs (A) and (B) demonstrate that they espouse separate and independent grounds for the discharge exception. We therefore conclude that reasonable reliance is not, as a matter of law, required under section 523(a)(2)(A). While so concluding we hasten to add that the reasonableness of reliance is strong circumstantial evidence in the factual determination regarding actual reliance, which is an element of subparagraph (A).

In the case at bar, the bankruptcy court concluded that Roberts' reliance was reasonable. We need not make that inquiry; rather, we need only ask whether Roberts, in signing the deeds conveying her property, in fact relied on Dean Allison's representation that the first mortgages would not exceed 20% of the purchase price, thus leaving Roberts adequately secured on the 80% credit portion of the purchase price. After hearing the testimony of those present at the closing of the sales, the bankruptcy court found that Roberts' attorney refused to proceed with the closing without a limitation on the first mortgages as agreed to in the contract to sell, the initial agreement on the transactions. That assurance was forthcoming from Dean Allison. Roberts relied on that assurance in signing the deeds conveying her property on a credit basis. The requisite reliance for section 523(a)(2)(A) purposes exists. We therefore reinstate the ruling of the bankruptcy court that Dean Allison's debt is not dischargeable in bankruptcy.

As to Phyllis Allison we agree with both the bankruptcy court and the district court that the debt is dischargeable. It was stipulated that: she neither met nor spoke with Roberts, her attorney, or daughter; she was not present at the closing; and she was not aware of any agreement to limit the amount of the mortgages placed on the property. "A debtor who has made no false representations may, nevertheless, be bound by the fraud of an agent acting within the scope of the debtor's authority." *Collier,* supra. The agency theory has been applied to impute the fraudulent acts of one spouse to the other in cases in which the other spouse was involved in a business or scheme. *See e.g., In re Luce,* —— F.2d ——, No. 91–1069 (5th Cir. March 9, 1992) (spouse partner in business); *In re Smith,* 98 B.R. 423 (Bankr.C.D.Ill.1989) (spouse lied to obtain business license for acting spouse); *In re Paolino,* 89 B.R. 453 (Bankr.E.D.Pa.1988) (spouse expressly agreed that other spouse could act as agent with at least some knowledge of planned acts). We find no evidence in the record linking Phyllis Allison to false or fraudulent acts or plans. Considering the statutory requirement for fraud involving moral turpitude or intentional wrong, we perceive no basis for applying the agency fraud theory to Phyllis Allison. *See In re Gallaudet,* 46 B.R. 918 (Bankr.D.Vt.1985).

We AFFIRM the ruling that the debt as to Phyllis Allison is dischargeable in bankruptcy. We REVERSE the district court and REINSTATE the ruling of the bankruptcy court that the debt of Dean Allison is not dischargeable in bankruptcy.

. . . . .